### BERGER v. GERBER PRODUCTS CO.
#### Civ. A. No. 1065.

District Court, W. D. Michigan, S. D.
Feb. 24, 1948.

Harold H. Smedley of Muskegon, Mich., for plaintiff.

Wm. J. Branstrom and J. Donald Murphy, both of Fremont, Mich., for defendant.

STARR, District Judge.

Plaintiff, a resident of Rochester, New York, is engaged in the food brokerage business in that city. Defendant, a corporation having its principal office and place of business in Fremont, Michigan, is engaged in the manufacture and sale of baby-food products. American Home Foods, Inc. (Clapp's Baby Food division), of Rochester, New York, herein referred to as "Home Foods," is also engaged in the manufacture and sale of baby-food products. On July 1, 1947, plaintiff began this suit to recover a brokerage commission of $3,774.60 on defendant's sale of approximately 12,600 cases of apricot concentrate to Home Foods. Defendant answered, denying liability on the ground that it had not authorized plaintiff to act as its agent or broker in connection with this sale. The case was tried by the court without a jury.

It appears that defendant had had business dealings with Home Foods for several years and that shortly prior to December, 1946, had sold it a substantial amount of apricot concentrate. These prior transactions were handled directly between the two companies, without the use or intervention of a broker. On December 4, 1946, defendant's assistant purchasing agent, M. D. Kimbell, telegraphed Home Foods as follows:

"Offer additional 12,600 cases apricot concentrate same as previous shipment Same basis. Subject prior sale.

"Gerber Products Company
"Per M. D. Kimbell."

This telegram constituted an offer by defendant to sell a certain quantity of apricot concentrate to Home Foods at the same price and terms as specified in their last previous transaction. On December 6, 1946, Home Foods by L. C. Lorscheider, its purchasing agent, wrote defendant acknowledging the above telegram and stating that it would give defendant's offer prompt consideration and determine whether or not it could use all or part of the concentrate offered. On December 12th defendant by M. D. Kimbell wrote Home Foods that it would appreciate a prompt reply regarding its offer to sell additional apricot concentrate. Shortly after writing this letter, Kimbell left Fremont on a business trip and did not return until about December 22d. On December 17th defendant's general purchasing agent, A. D. Bain, telephoned Lorscheider at Home Foods regarding defendant's offer. Both Bain and Lorscheider testified relative to this telephone conversation, but their testimony is in sharp conflict. Bain said:

"I * * * asked Mr. Lorscheider if we could have his order, according to the terms and conditions as outlined in * * * our telegram of December 4th. He stated at that time that he was desirous of having Mr. Berger (plaintiff) * * * handle this transaction. I explained to him that the Gerber Products Company had no interest in bringing in an outsider, in that we had offered this to him directly, and were not anxious or interested in paying any brokerage fee. He further stated that they liked the product and saw no reason why they would not buy it, provided it was handled through Mr. Berger. * * * I again at that time asked him for the order, and told him that Gerber Products had no interest in injecting a third party into the transaction. * * *

"Q. Was there any statement made in that conversation relative to what capacity Mr. Berger could be injected into the picture? A. No, sir. * * *

"Q. Did you, for the Gerber Products Company ever agree to accept Mr. Berger as your broker? A. I did not.

"Q. Did you ever make any agreement or any promise to pay him any commission on the sale of this lot of merchandise? A. No, sir."

Lorscheider testified regarding this telephone interview with Bain as follows:

"Mr. Bain said to me that they had a block of apricot concentrate, of a type exactly the same as * * * we on a previous occasion had purchased; * * * and they wanted to know whether or not we had any need for additional supplies. * * * It is my recollection that he mentioned that the price would be the same as on the previous order. * * * I answered him that I did not know whether we would be interested in buying any more apricot concentrate from them; that there was a possibility that we would, * * * but that if we did we would want to place the business through a broker in Rochester, M. R. Berger, with whom we had had previous relations on this apricot product, and to whom we had given a form of commitment for the procurement for us of apricot concentrate. * * * I don't just recall what he (Bain) said, * * * but I do recall this, that I stated if * * * we would buy any more apricot product, we wanted to buy it through Berger. * * * I asked Mr. Bain's permission to contact Mr. Berger and I suggested that I would have him contact the Gerber Company direct.

"Q. What did he (Bain) say? A. There seemed to be no objection to it; that seemed agreeable. * * *

"Promptly after hanging up from that call, in line with the information that I had given Mr. Bain, I called Mr. Berger, and I told him of the availability of this product, and suggested that he contact the Gerber Company. * * * Mr. Bain agreed to my notifying Mr. Berger of this merchandise's availability."

Plaintiff said that immediately after talking to Lorscheider, he telephoned Bain. Both plaintiff and Bain testified regarding this telephone conversation, but their testimony is also in conflict. Plaintiff testified:

"I told Mr. Bain I was Mr. Berger about whom Mr. Lorscheider had just spoken to him. * * * I told him if I could have brokerage on this apricot product they were offering, I felt I could effect a sale of it to the American Home Foods. * * * Mr. Bain said he could see no particular objection. * * * I asked for a recapitulation of what they had to offer, and the price, and he told me they had approximately 12,600 cases of apricot product to offer at $15 per dozen. * * *

"Q. Did he say anything, or did you say anything as to what the amount of brokerage on this would be? * * * A. No, I assumed the ordinary brokerage would prevail. I said he would hear from me, if I made the sale."

Bain gives a different version of this telephone interview. He testified:

"Mr. Berger identified himself as the man * * * who had been previously discussed by Mr. Lorscheider and myself. He stated he was a broker and believed that he could secure the sale of this apricot concentrate to the American Home Foods, and wanted to know if Gerber Products would accept him as a broker. I explained to Mr. Berger that the Gerber Products Company were not interested in injecting a broker into this transaction. However, if he wished to be injected * * * into this transaction as an agent for the American Home Foods, and * * * look to them for a commission, we would have no objection to dealing with him on that basis. * * *

"Q. And you claim when you talked with Mr. Berger you also told him that Gerber Company was not interested in paying any brokerage commissions on the sale of this apricot? A. That is right."

Plaintiff said that immediately after talking with Bain, he called Lorscheider and made him a formal offer of the 12,600 cases of apricot concentrate at $15 a dozen. He testified that Lorscheider said Home Foods would accept the concentrate if the quality was as good as the previous merchandise it had received from defendant. Immediately following this telephone interview with Lorscheider, plaintiff telegraphed defendant as follows:

"Gerber Baby Food Products
"Mr. Bain Fremont Mich

"Confirming sale approximately 12,500 cases concentrated apricot puree to Clapp Baby Foods Rochester 15.00 dozen fob warehouse.

"Milton R. Berger."

On December 18th Home Foods gave plaintiff a purchase order, No. R 7921, for 12,600 cases of apricot concentrate at $15 a dozen. After receiving this order, plaintiff wrote defendant on December 20th as follows:

"Confirming our previous wire to you, we have sold for your account to:

"American Home Foods, Inc., Clapp's Baby Food Division, 777 Mt. Read Blvd., Rochester 3, N.Y.

"Approx. 12,600 cs. apricot concentrate @ $15 dz. Fob present warehouse.

"Product guaranteed to be equal or better than that shipped under Clapp purchase order R 7637, 11/8/46, as represented by samples submitted to them and approved by their laboratory.

"Ship, if possible, one car every other day until order is completed. First shipment to be made not before January 6, 1947.

"Clapps purchase order No. R 7921.
"Brokerage 4%. * * *

"Milton R. Berger."

Defendant did not acknowledge this letter or order of December 20th until January 14, 1947, when it wrote plaintiff as follows:

"This has reference to your December 20th letter, regarding approximately 12,600 cases of apricot concentrate, which we note carries this notation. 'Brokerage 4%.'

"We want to go on record here as stating that we have never offered this merchandise to any brokerage concern excepting one in Chicago and that on a buyer's brokerage basis.

"Regarding sale of this merchandise to American Home Foods, Inc., Clapps Baby Food Division. Previous to receipt of your letter, this merchandise was offered to this concern direct.

"Under the circumstances, we will be unable to honor any invoices for brokerage

on the sale referred to in your December 20th letter. * * *

"M. D. Kimbell
"Purchasing Agent."

In the meantime, on January 3d, defendant's purchasing agent Kimbell had telephoned Lorscheider at Home Foods regarding the apricot concentrate in question. Their testimony relative to this telephone conversation is conflicting. Kimbell testified:

"I asked Mr. Lorscheider if he was going to purchase the apricots which we had offered, on our offering basis, and he said that they would, that they wanted them, and we discussed the terms and the possibility of handling them on a transit basis, and we agreed to bill them to American Home Foods on warehouse receipts.

"Q. In that conversation with Mr. Lorscheider on January 3d, did he make any mention to you of a Mr. Berger? A. He did not."

Lorscheider denied that in this telephone conversation on January 3d he gave Kimbell a verbal order for the apricot concentrate. He said that the entire conversation related to changing the method of delivery and that the only order referred to was purchase order R 7921 which Home Foods had given plaintiff. On January 10th defendant by Kimbell wrote American Home Foods, attention Lorscheider, in part as follows:

"In line with our recent telephone conversation (on January 3d), we have instructed Bankers Warehouse at Brighton to transfer to your account 15,582 (should be 12,582) cases 6/10 apricot concentrate which we have in storage at their Brighton, Colorado, warehouse.

"We are requesting them to furnish us with the transit freight bills and copies of their warehouse receipts which will be sent you as soon as they are received, along with our invoice."

On January 15th defendant sent Home Foods an invoice for 12,582 cases of apricot concentrate in the amount of $94,365. This invoice was promptly paid. In subsequent correspondence between the parties, plaintiff contended that defendant had authorized him to sell the apricot concentrate to Home Foods; that in pursuance of his

letter of December 20th defendant had accepted and filled purchase order R 7921, which he had obtained from Home Foods on December 18th; and that he was entitled to a brokerage commission on the sale. Defendant contended that it had not authorized plaintiff to act. as its agent or broker; that it had not accepted or filled purchase order R 7921; that it had sold the apricot concentrate directly to Home Foods in pursuance of a verbal telephone order from Lorscheider on January 3, 1947; and that plaintiff was not entitled to brokerage commission on the sale.

■ The question presented is whether or not plaintiff is entitled to a brokerage commission on defendant's sale of the apricot concentrate to Home Foods. The burden is upon the plaintiff to establish by a fair preponderance of the evidence that a contractual relationship of principal and agent was created between defendant and himself. Such an agency contract could be created either by express agreement or could be implied from the words and conduct of the parties. In 8 Am. Jur. it is stated: .

Page 998, sec. 17. "A brokerage relationship is created by a contract between the parties, the elements of which are those that enter into the formation of any contract. This contract may arise either by virtue of a prearranged agreement between them, express or implied, or by the principal's subsequent ratification of the broker's unauthorized acts."

Page 1077, sec. 158. "A contract of employment, either express or implied, is necessary to entitle a broker to compensation for. services rendered. Whether a contract is to be implied from certain acts, depends upon the circumstances thereof."

In 12 C.J.S., Brokers, § 12, it is stated: "A contract of employment is necessary to constitute the relation of agency between a broker and his customer. This contract is governed by the law applicable to ordinary contracts, and ordinarily may be either express or implied. No particular form is required for such a contract of employment; it may be made by correspondence, consisting of an interchange of letters or telegrams; and ordinarily all that is necessary is that the broker acts with the consent of the principal, whether such consent is given by a written instrument, orally, or by implication from the conduct of the parties." See also 12 C. J. S., Brokers, § 61a.

■ To determine if either an express or an implied agency contract was created, the court must examine the words and conduct of the parties and the facts and circumstances surrounding the entire transaction. The testimony clearly indicates that plaintiff did practically no work in connection with the sale to Home Foods and that he was injected into the transaction by Lorscheider of Home Foods for the purpose of enabling him to claim a brokerage commission from defendant. However, the fact that plaintiff was injected into the transaction by Home Foods is .not alone determinative of the question as to whether or not an agency contract and relationship, either express or implied, was created. There was no writing appointing plaintiff as agent or broker, and as the testimony relative to the several telephone conversations about his appointment is in direct conflict, the court concludes that no express contract of agency was created. Having held there was no express contract of agency, the court must next determine whether or not the words and conduct of the parties and the surrounding facts and circumstance created an implied contract of agency.

■ From its telegram of December 4th, its letter of December 12th, and its telephone call of December 17th, it is apparent that defendant was rather anxious to sell the apricot concentrate in question. It had notice that Home Foods insisted that the sale be handled through plaintiff, and also notice that plaintiff would claim a four per cent brokerage commission on the sale. Both plaintiff and Lorscheider of Home Food testified in substance that they would not have dealt with defendant except that plaintiff be paid a brokerage on the sale. Immediately following Lorscheider's telephone interview with defendant's purchasing agent, Home Foods gave plaintiff written purchase order R 7921 for the concentrate. It hardly seems logical that Home Foods would have placed this order

with plaintiff unless Bain, in their telephone interview, had led Lorscheider to believe that the transaction would be handled through plaintiff as a broker. Furthermore, it hardly seems logical that plaintiff, following his telephone interview with Bain, would have telegraphed a confirmation of the sale and followed that with his letter of confirmation of December 20th, unless he had been led to believe that he would be recognized as defendant's broker in the transaction. It is significant that after receiving plaintiff's letter of December 20th with his claim of a four per cent brokerage noted thereon, defendant did not reply or reject the order or disaffirm plaintiff as its agent until January 14th, when it wrote him denying his claim for brokerage. However, on January 3d, prior to rejecting plaintiff's claim of brokerage, defendant had arranged by telephone for shipment to Home Foods of approximately the same amount of concentrate at the same price as specified in purchase order R 7921 given plaintiff by Home Foods. It is reasonably apparent that defendant wanted to make the sale but also wanted, if possible, to by-pass plaintiff.

Defendant's purchasing agent Kimbell testified that in their telephone interview on January 3d, Lorscheider gave him a verbal order for the concentrate. Lorscheider denied that he gave such a verbal order and said that the entire conversation related to changing the method of delivery of the concentrate and that the only order referred to in this conversation was purchase order R 7921, which Home Foods had given plaintiff on December 18th. Lorscheider's statement that he did not give Kimbell a verbal order is to some extent substantiated by Kimbell's letter of January 10th in which he referred to shipping instructions but did not mention the alleged verbal order. It does not seem logical that Home Foods would have given defendant a verbal telephone order for the concentrate on January 3d when it had previously, on December 18th, given plaintiff a formal, written order for the same merchandise at the same price. Furthermore, Home Foods did not, as was its custom, furnish defendant with a written confirmation of the alleged verbal order of January 3d. It is significant that the only written order in this entire transaction was the order which Home Foods gave plaintiff on December 18th and which he confirmed to defendant by telegram and letter.

The evidence adduced is convincing that defendant filled purchase order R 7921, which plaintiff had obtained from Home Foods, by shipping to Home Foods approximately the same amount of apricot concentrate at the same price as specified in that order. Its fulfilment of that order was an acceptance thereof and created an implied contract of agency between it and plaintiff. In view of the words and conduct of the parties and the facts and circumstances surrounding this entire transaction, the court is constrained to hold that plaintiff is entitled to recover a brokerage commission of $3,774.60 on defendant's sale of apricot concentrate to Home Foods. Judgment will be entered for plaintiff in the amount of $3,774.60 together with interest thereon at five per cent from February 3. 1947, to this date in the amount of $199.59

### Findings of Fact

1. Plaintiff is a resident and citizen of the State of New York; defendant is a Michigan corporation with its principal office and place of business in Fremont, Michigan; the amount in controversy, exclusive of interest and costs, exceeds $3,000.

2. In December, 1946, defendant offered to sell American Home Foods, Inc. (Clapp's Baby Food division), 12,600 cases of apricot concentrate at $15 a dozen. In telephone interviews with defendant's general purchasing agent, Home Foods and plaintiff were led to believe that the sale would be handled through plaintiff as defendant's agent and broker. Defendant had notice that Home Foods insisted that the sale be handled through plaintiff as a broker and also notice that plaintiff would claim a brokerage commission on the sale. On December 18, 1946, Home Foods gave plaintiff purchase order R 7921 for the apricot concentrate. On December 20th plaintiff wrote defendant confirming his sale of the concentrate to Home Foods under said purchase order and on his letter noted his claim of a four per cent brokerage commission.

798

3. Defendant accepted and filled purchase order R 7921, which plaintiff had obtained from Home Foods, by shipping to Home Foods approximately the same amount of apricot concentrate at the same price as specified in said order. By accepting and filling this order, defendant accepted plaintiff as its agent and broker.

4. Home Foods did not give defendant a verbal telephone order for the concentrate on January 3, 1947.

5. An implied contract of agency was created between plaintiff and defendant.

6. Plaintiff's brokerage commission on the sale to Home Foods is the sum of $3,774.60.

7. Interest at five per cent on this amount for the period from February 3, 1947, to the date hereof is $199.59.

### Conclusions of Law

1. This court has jurisdiction of the parties and of the subject matter of this suit.

2. No express contract of agency was created between plaintiff and defendant.

3. The words and conduct of the parties and the facts and circumstances surrounding the entire transaction created an implied contract of agency between plaintiff and defendant.

4. Plaintiff is entitled to recover from defendant a brokerage commission of $3,774.60 on its sale of apricot concentrate to Home Foods in the amount of $94,365.

5. Plaintiff is also entitled to recover from defendant $199.59 as interest on said sum of $3,774.60.