891 F.2d 294
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CROMPTON AND KNOWLES CORPORATION, Plaintiff-Appellee,
v.
Frank CARMI and Carmi Flavor and Fragrance Co., Inc.,
Defendants-Appellants.
 No. 88-6266.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1989.
Decided Dec. 6, 1989.
 
 Before SKOPIL, FLETCHER, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Frank Carmi and Carmi Flavor and Fragrance Company (CFF) appeal the district court's denial of relief against Crompton and Knowles Corporation (Crompton) for claimed violations of two provisions of a settlement agreement between Crompton and CFF embodied in a constant decree. The court did find Crompton liable for violation of a third provision. Crompton has not appealed that ruling. CFF claims that the district court misinterpreted the agreement and also erred in finding Crompton had not violated the two provisions. We affirm.
 
 FACTS
 
 3
 Frank Carmi, CFF, and Crompton entered into a Consent Decree on January 25, 1984 to settle an unfair competition and breach of contract action. In that action, Crompton alleged that CFF and Carmi, its president, had misappropriated and used its flavor and fragrance formulas in manufacturing CFF's products, and that those formulas were trade secrets.
 
 
 4
 The current action turns on Crompton's actions in respect to Lee Steitz, formerly a flavor broker for both companies, and the consequences of Steitz's changed status. In 1983, Crompton began recruiting Steitz as an exclusive sales representative and mailed him a proposed contract in December 1983. Steitz discussed Crompton's offer with CFF. Sometime after the settlement agreement was signed in January, a Crompton employee called Steitz and attempted to get him to sign the exclusive sales contract. Steitz signed in February and sent a signed copy to CFF.
 
 
 5
 Steitz then stopped seeing five customers who had previously purchased CFF's products from him. Three ceased purchasing CFF products. CFF claims that Steitz's ceased representation, resulting from Crompton's interference, caused this business loss.
 
 
 6
 The Settlement Agreement Provisions at Issue
 
 
 7
 CFF alleged in its lawsuit that Crompton, by signing Steitz to the exclusive sales agreement, had violated the provisions of section 4 of the settlement agreement that provided the parties would not:
 
 
 8
 (a) solicit, divert or attempt to take away any present or future employee, agent, representative, distributor or broker of the other party, or induce or attempt to induce any such present or future employee, agent, representative, broker or distributor to quit or terminate such relationship with the other party or otherwise interfere with or disrupt the other party's relationship with its employees, agents, representatives, distributors or brokers;
 
 
 9
 (b) disrupt, interfere, or attempt to disrupt or interfere with any contractual, proprietary or fiduciary relationship, duty or obligation existing, at any time, by and between the other party and any past, present or future employee, agent, distributor, broker or other representative;
 
 
 10
 (c) disrupt, interfere, or attempt to disrupt or interfere with any contractual or proprietary relationship, duty or obligation existing, at any time, by and between a party and any present or future customer or account of a party except for sales in the ordinary course of business not otherwise restricted herein.
 
 
 11
 Under section 12 of the settlement agreement, the violating party must pay to the other party $25,000 in liquidated damages for each violation of paragraphs 4(a) and 4(b) and $5000 for each violation of paragraph 4(c). Section 12 also specifies that each act that violates any restriction in paragraphs 4(a) or 4(b) "shall constitute a separate violation for purposes of assessing" the liquidated damages. CFF alleged that Crompton had committed one violation of 4(a), one violation of 4(b), and one violation of 4(c) for each customer lost, for a total of $65,000 in liquidated damages.
 
 
 12
 Prior Proceedings in the District Court and the Ninth Circuit
 
 
 13
 Crompton filed this action, seeking resolution of issues contested under the consent decree, and CFF counterclaimed. Initially, the district court held that CFF had not proved that Crompton had violated any of the section 4 provisions by signing Steitz to the exclusive sales agreement. CFF appealed. In a memorandum decision, this court held that the phone call to Steitz, if it took place after the settlement agreement was signed, would constitute "solicitation" under California law. Crompton & Knowles Corp. v. Carmi, No. 86-6497, mem.dec. at 4 (9th Cir. Dec. 23, 1987). The court continued,
 
 
 14
 This reading is confirmed by other language in the consent decree ordering the parties not to "divert or attempt to take away" an employee, or to "induce or attempt to induce" a broker to sever his relationship with the other party. Taken together, these terms indicate a sweeping prohibition against any interference, not merely against acts by which additional benefit was proffered.
 
 
 15
 Id. The court vacated the trial court's order and remanded for additional factual findings on whether CFF contacted Steitz after the settlement agreement and, if so, on the substance of the conversations. Id.
 
 
 16
 On remand, the district court, based on the additional factual findings, held that CFF had violated paragraph 4(a) of the agreement, but not paragraph (b) or (c), and awarded $25,000 in liquidated damages. With regard to paragraph (b), the court stated,
 
 
 17
 Unlike subpart (a), which merely requires disruption of a relationship, parts (b) and (c) require disruption or interference with a contractual, proprietary, or fiduciary relationship or other obligation. No such formalized duty on the part of Steitz or concerning the three Steitz customers has been shown. Steitz appears to have been an independent broker, free-lancer, with no obligations to continue doing brokerage work for Carmi.
 
 
 18
 Similarly, the three Steitz customers had no contractual ties to Carmi outside of the discrete orders placed through Steitz. These informal relationships are not covered by subparts (a) and (b) [sic][1] in the view of the court.
 
 
 19
 At the hearing, CFF argued that, under the court's reasoning, no action could constitute a violation of more than one settlement agreement provision--paragraphs 4(a) and 4(b) in particular--although section 12 specifically states that it can. The court indeed queried CFF whether under its interpretation anything that violated 4(a) would not necessarily violate 4(b). The court asserted that without a distinction, one provision would be superfluous. CFF, however, implicitly analogized the distinction between the two provisions to the difference between an attempted and a completed crime. Paragraph 4(a) prohibits the separate acts of solicitation and attempt to disrupt business. Paragraph 4(b), on the other hand, prohibits succeeding in those efforts. Because, in CFF's view, it actually lost customers as a result of Steitz no longer brokering for them, Crompton had also violated paragraph 4(b). The court found CFF's reasoning unpersuasive, repeating that the evidence did not support a finding that Crompton had violated 4(b) or 4(c).
 
 DISCUSSION
 
 20
 I. Refusal to Find Settlement Agreement Violations
 
 A. Construction of the Contract
 
 21
 CFF alleges that the district court's refusal to find a violation of paragraph 4(b) "is grounded, in part, upon its unwillingness to find that one act (i.e. a successful disruption of a broker's relationship with CFF) could constitute two distinct violations of the Consent Decree." Appellant's Brief at 24. CFF contends that this involves an interpretation of the consent decree and should be reviewed de novo. Admittedly, de novo review is permitted in cases involving interpretation of consent decrees. Nonetheless, since the district court has overseen the case from complaint to consent decree enforcement, some deference is due the district court's decision because " '[f]ew persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it.' " Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 893 (9th Cir.1982) (quoting Brown v. Neeb, 644 F.2d 551, 558 n. 12 (6th Cir.1981)).
 
 
 22
 CFF mistakenly states that the court was unwilling to find that one event could constitute two distinct violations under any circumstances. The transcript makes clear, however, that the judge was simply not willing to find that every violation of paragraph 4(a) also constitutes a violation of paragraph 4(b). Otherwise, the provisions would be superfluous. The court found that, in this case, the evidence demonstrated a violation of 4(a) but not 4(b).
 
 
 23
 The real difference between CFF and the district court lies in how they distinguish between the two provisions. CFF claimed that 4(a) prohibits solicitation and attempt to disrupt, while 4(b) prohibits successful disruption. This interpretation, even under de novo review, is not apparent on the face of the settlement agreement. For instance, both provisions prohibit "attempts" at disruption. The district court, on the other hand, saw the distinction in the nature of the relationship being disrupted. Disrupting "relationships," unqualified, violates paragraph 4(a). Paragraph (b) is narrower and prohibits disruption of a particular kind of relationship: a "contractual, proprietary or fiduciary relationship, duty or obligation." Although the intended distinction between paragraphs 4(a) and 4(b) is somewhat unclear, we do not believe the district court erred in its analysis and conclusion.
 
 B. Paragraph 4(b)
 
 24
 The district court's findings of fact regarding whether Crompton's action violated paragraphs 4(b) and 4(c) can only be reversed if clearly erroneous. Sessions, Inc. v. Morton, 491 F.2d 854, 858 (9th Cir.1974); Fed.R.Civ.P. 52(a).
 
 
 25
 CFF relied on the following evidence to support its claim that a paragraph 4(b) relationship existed. First, Steitz had served as a flavor broker for CFF for a significant period of time. Second, Steitz sold CFF products using CFF invoices and received commissions from CFF on those sales. These two facts do not prove the kind of contractual relationship intended in paragraph 4(b).
 
 
 26
 CFF further argues, however, that because Steitz was a "broker," and all brokers are "agents," and the relationship between agent and principal is "fiduciary," that Steitz's relationship qualifies as a relationship subject to disruption under paragraph 4(b). Steitz was indeed a merchandise broker. See Ayres v. Thomas, 116 Cal. 140, 143, 47 P. 1013, 1013 (1897); Black's Law dictionary 175 (5th ed. 1979) ("Merchandise brokers. Buyers and sellers of goods and negotiators between buyer and seller, but without having the custody of the property."). Brokers are a subspecies of agent. Appleby v. Kewanee Oil Co., 279 F.2d 334, 336 (10th Cir.1960) ("a broker is but a species of agent who may also be an independent contractor"); Restatement (Second) of Agency § 14N comment a (1958) [hereinafter Restatement] (brokers are independent contractors and, as such, "fall within the category of agents"); see also Black's Law Dictionary, supra, at 174 ("Broker. An agent employed to make bargains and contracts for a compensation."). Agents do have fiduciary duties to their principals. Pollack v. Lytle, 120 Cal.App.3d 931, 940, 175 Cal.Rptr. 81, 85 (1981); Restatement, supra, § 1(1). CFF relies on this string of definitions to qualify Steitz's relationship with the company as one included under paragraph 4(b). Neither the law nor the facts, however, supports the conclusion that this relationship, despite CFF's superimposed legal labels, is a paragraph 4(b) relationship.
 
 
 27
 Case law on independent merchandise brokers who sell for several companies is rare and usually does not address the peculiar nature of the agency relationship between broker and principal. An Iowa court described this relationship: "[Brokers] are agents, it is true, but their powers are limited, and when they have no charge or control over the property, but act only as go-betweens in effectuating a sale, they cannot be said to be agents in the larger sense in effectuating the sale." Lawrence Gas Co. v. Hawkeye Oil Co., 182 Iowa 179, 165 N.W. 445, 447 (1917) (merchant oil broker not agent for purpose of receiving payment for goods). Additionally,
 
 
 28
 [a] broker is distinguished from an agent in that a broker sustains no fixed and permanent employment by, or relation to, any principal, but holds himself out for employment by the public generally, his employment in each instance being that of special agent for a single object, whereas an agent sustains a fixed and permanent relation to the principal he represents and owes a permanent and continued allegiance. City of Chicago v. Barnett, 404 Ill. 136, 88 N.E.2d 477, 481 (1949) (citation omitted) (conviction for engaging in business as insurance broker without a license). The agency relationship between a merchandise broker and the manufacturer begins when the manufacturer accepts and fills an order procured by the broker, Berger v. Gerber Prods. Co., 75 F.Supp. 792, 797 (W.D.Mich.1948) (broker entitled to commission when order filled), and ends then as well, Lawrence Gas, 165 N.W. at 447 (agency ceases when the broker places the order).
 
 
 29
 The facts also disfavor CFF's characterization of its relationship with Steitz. CFF did not physically control Steitz. Furthermore, although Steitz had served for about three years as a flavor broker for CFF, his duties arose out of discrete sales and he was not obligated to continue to serve as CFF's broker at any time. He could only act "on behalf of" CFF under limited circumstances for a limited purpose.
 
 
 30
 In trying to prove either agency or any other paragraph 4(b) relationship, the burden is on CFF. The district court was not clearly erroneous in finding that CFF had not met that burden. Not only was the submitted evidence insufficient, but CFF did not proffer information within its own control on the relationship between Steitz and CFF that would have greatly strengthened its claim. They submitted no evidence of a written or oral contract, no evidence that Steitz was bound to sell any CFF products at any time, and even no evidence that he was required to make any sales calls for CFF. Just as the district court determined, CFF did not prove that Steitz had any kind of duty to CFF at all other than duties arising out of the specific sales that he did broker for the company.
 
 
 31
 CFF cites the ninth circuit memorandum decision on the previous appeal for the proposition that paragraph 4(b) should be interpreted broadly. When the circuit spoke of a "sweeping prohibition," however, it was speaking only of paragraph 4(a). Crompton & Knowles, mem.dec. at 4. The district court was not clearly erroneous in finding that Crompton did not violate paragraph 4(b) by signing Steitz to an exclusive sales agreement.
 
 C. Paragraph 4(c)
 
 32
 Steitz ceased seeing five customers on behalf of CFF after he signed the exclusive sales agreement with Crompton. Three of those customers stopped buying CFF products. CFF contends that Crompton's disruption caused this business loss and thus violated paragraph 4(c).
 
 
 33
 CFF has not offered one piece of evidence to support its claim. Most importantly, it did not prove causation. CFF has provided no evidence that these customers stopped buying from CFF because Steitz stopped brokering for it. It offered no evidence as to these companies' current sources. If CFF were correct that they stopped buying because they wanted to deal with Steitz, one would assume they now buy from Crompton. CFF offers no evidence that this is so. That two customers stayed with CFF is also at odds with CFF's assertion that Steitz's departure caused the other three customers to change suppliers.
 
 
 34
 The district court was not clearly erroneous in finding that Crompton had not violated paragraph 4(c) of the settlement agreement by signing Steitz to an exclusive sales agreement.
 
 II. Attorneys' Fees
 
 35
 Section 15 of the settlement agreement between CFF and Crompton provides that "[a]ll of prevailing party's reasonable and necessary costs and expenses, including reasonable attorneys' fees, incurred at any time in enforcing any provision of this Consent Decree and Final Judgment shall be paid by the losing party if such enforcement action arises out of a breach of this Consent Decree and Final Judgment." Both CFF and Crompton seek attorneys' fees to the extent they have prevailed.[2]
 
 
 36
 Federal courts are to apply state law in diversity actions when considering whether to award attorneys' fees. Michael-Regan Co. v. Lindell, 527 F.2d 653, 656 (9th Cir.1975). Both parties consider it appropriate to apply California law in this case. In California, a party can recover attorneys' fees only when expressly allowed by statute or when the parties specially contract for them. Ralston-Purina Co. v. Carter, 210 Cal.App.2d 372, 379, 26 Cal.Rptr. 690, 694 (1962); Cal.Civ.Proc.Code § 1021 (West Supp.1989). Section 15 of the settlement agreement between CFF and Crompton provides that the losing party will pay all of the prevailing party's attorneys' fees incurred "at any time" in enforcing the agreement. Case law also authorizes recovery of attorneys' fees incurred on appeal when the agreement provides for attorneys' fees. Ecco-Phoenix Electric Corp. v. Howard J. White, Inc., 1 Cal.3d 266, 272-74, 461 P.2d 33, 36-38, 81 Cal.Rptr. 849, 852-54 (1969) (awarding fees provided in contract); Berven Carpets Corp. v. Davis, 210 Cal.App.2d 206, 217, 26 Cal.Rptr. 513, 520 (1962) (awarding attorneys' fees provided in promissory note).
 
 
 37
 The district court held that CFF is entitled to reasonable attorneys' fees in connection with Crompton's violation of paragraph 4. CFF did not petition the court for those fees, opting to await the outcome of this appeal. Upon proper applications, the district court should award CFF its attorneys' fees incurred on the paragraph 4 violations. Of course, in determining the amount of those attorneys' fees, the district court may consider the fact that CFF only prevailed on a portion of its claim. Crompton is entitled to its attorneys' fees and costs on this appeal, and the district court shall also determine those attorneys' fees and costs upon remand.
 
 CONCLUSION
 
 38
 We affirm the district court's holding that Crompton did not violate paragraphs 4(b) and 4(c) of the settlement agreement. Attorneys' fees are awarded as indicated, and we remand the case to the district court to determine the amount of those fees.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the Courts of this Circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 The court surely meant (b) and (c), as conceded by appellant. Appellant's Brief at 14-15
 
 
 [2]
 This provision does not specifically provide for fees incurred in defending enforcement actions, but this is implied in any case. Cal.Civ.Code § 1717 (West Supp.1989) provides that if the contract specifies fees for one party, the other party is entitled if it prevails