## Fidelity & Deposit Company of Maryland v. O'Bryan, et al.

(Decided April 23, 1918.)

### Appeal from Hopkins Circuit Court.

1. Indemnity—Consideration for Execution of Bond of—Subsequent Execution.—Where a bond of indemnity is executed simultaneously with the undertaking of the indemnitee, or is subsequently executed pursuant to an agreement or arrangement made between the indemnitee and the indemnitors, at the time or before the indemnitee assumed liability there will be sufficient consideration for its execution.

2. Indemnity—Subsequent Execution of Bond of—When Not Binding on Indemnitors.—If a bond of indemnity is executed subsequent to the time when the indemnitee became liable upon the undertaking for which he wants indemnity, and without a new consideration, the indemnitors will not be liable on the bond unless it was executed pursuant to a prior arrangement.

3. Indemnity—Scope and Effect of Bond of—Liability of Indemnitors.—Where a bond of indemnity undertook to indemnify the indemnitee against any loss or damage he might suffer on account of his suretyship in a sheriff's bond, the indemnitors became liable to the indemnitee for the amount he was required to pay as such surety in satisfaction of a judgment against him, unless he had by negligence or laches released the indemnitors from liability.

4. Indemnity—Bond of—What Laches or Negligence of the Indemnitee Will Release the Indemnitor.—The laches or negligence of the indemnitee that will release the indemnitors on a bond of indemnity conditioned like the one here in question must be the direct result of some act or conduct on the part of the indemnitee but for which he would not have suffered any loss. In other words, when the indemnitee is sought to be made liable on his undertaking he must not by his laches or negligence put upon the indemnitors a burden they would not otherwise be

compelled to bear, but this duty does not go to the extent of obliging the indemnitee to bring suit against his principal or third parties to protect the indemnitors or to take any steps to recover from his principal or third parties the fund for which he has become liable on his undertaking. It is the business of the indemnitors to resort, for their own protection, to remedies like these if they desire to do so.

LAFFOON & WADDILL for appellant.

W. J. COX, J. A. JONSON, and WM. H. YOST for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On January 4, 1904, Blackwell, who was then sheriff of Muhlenberg county, executed bond for the collection of taxes with the appellant, Fidelity & Deposit Company of Maryland as surety. At a time simultaneous with or subsequent to this, there being some dispute about the date, the appellees, P. L. O'Bryan and others, executed a bond of indemnity to the Fidelity & Deposit Company of Maryland, in which bond it is recited that: "Whereas at a special instance and request of the said William Dallas Blackwell; M. J. Roark, W. T. Miller, J. S. Miller; P. L. O'Bryan, J. H. Smith, W. A. Wickliffe and Lewis Reno and on the security hereof the said Fidelity and Deposit Company of Maryland has executed or agreed to execute as surety the official bond of the said William Dallas Blackwell, sheriff and tax collector of Muhlenberg county, Kentucky.   .  .  .

Now therefore in consideration of the foregoing premises and other good and valuable consideration, the said William Dallas Blackwell, M. J. Roark, W. T. Miller, J. S. Miller, P. L. O'Bryan, J. H. Smith, W. A. Wickliffe and Lewis Reno for themselves, their heirs, executors and administrators hereby covenant and agree to the said Fidelity & Deposit Company of Maryland to indemnify it and keep it indemnified for and against any and all loss, damages, costs, charges, counsel fees and expenses of whatever nature or kind to the extent of $5000.00, and no further, which the said Fidelity & Deposit Company of Maryland shall or may at any time sustain, incur or be put to for any reason or in consequence of having executed said bond and any continuation thereof."

During the time the bond of the Fidelity & Deposit Company of Maryland was in force, and in 1904, Blackwell defaulted in the payment of taxes collected and the county of Muhlenberg brought suits against him on his official bond to recover the amount of his defalcation, and in September, 1912, judgments went against Blackwell and his surety the Fidelity & Deposit Company, for the amount sought to be recovered. When these suits were brought, the Fidelity & Deposit Company notified in writing the indemnitors, but apparently they gave no attention to the suits which were prosecuted to judgment with the result stated.

In November, 1912, a written agreement was entered into between the Fidelity & Deposit Company and P. L. O'Bryan and the other indemnitors, which agreement, after setting out the fact that the Fidelity & Deposit Company had become the surety of Blackwell, and the further fact that P. L. O'Bryan and others, naming them, had agreed according to its contention, which was disputed by the indemnitors, to indemnify it by the writing heretofore mentioned, and the further facts as to the suits brought by Muhlenberg county against Blackwell and his surety, and the judgments in said suits, then set forth that: as the Fidelity & Deposit Company had paid or was about to pay the judgments and was looking to the indemnitors for the payment of same to it as required by the bond, which liability they disputed; and that the indemnitors claimed that the Fidelity & Deposit Company had a lien upon certain property of Blackwell for the payment of any sums it may have to pay as surety on his official bond; and that the Fidelity & Deposit Company had agreed, so far as it was possible to do so without forfeiting any of its rights against the indemnitors, to co-operate with the indemnitors in an effort to have these judgments paid out of the property held by Blackwell, when he was in office; and for this purpose it consented to proceedings being taken in its name as Blackwell's surety to secure satisfaction out of the property held by him, provided the proceedings were taken on the responsibility of the indemnitors who undertook at their own expense the collection of said judgment by proper proceedings in the name of the Fidelity & Deposit Company against Blackwell out of such property as he may have owned at the time or since he was sheriff of Muhlenberg county. It was fur-

ther agreed that neither the Fidelity & Deposit Company nor the indemnitors should by the agreement waive or lose any right of action or cause of defense that either might have against the other.

Subsequently, suit was brought in the name of the Fidelity & Deposit Company pursuant to this agreement against Blackwell and others, but that suit, which will later be referred to, did not result in recovering any of the funds the surety company had to pay, and in 1915, it brought this suit against O'Bryan and the other indemnitors seeking to recover from them the amount of the judgments it paid as the surety of Blackwell.

For defense to this suit, the indemnitors set up: first, that there was no consideration for the bond of indemnity executed by them, because it was executed subsequent to the time when the Fidelity & Deposit Company of Maryland became liable on the bond of Blackwell, and this being so it was not enforceable; and second, that if the bond of indemnity was enforceable, they had been released from liability on it by the failure of the surety company to take, in proper time, such action as would have enabled it to recover from Blackwell and his vendees the full amount it had been required to pay as his surety.

On this appeal two questions are presented for our decision: first, was there any consideration for the execution of the bond of indemnity? and second, if there was, were the indemnitors released from liability by the failure of the surety company to take in proper time and manner such steps as might have enabled it to recover from Blackwell and his vendees, the amount it was required to and did pay as his surety?

On the question as to whether there was any consideration for the bond of indemnity, the facts are these: The surety company had been on the bond of Blackwell, sheriff, for the years 1902 and '03, and it appears from the evidence that it declined, or was about to decline, to execute the bond Blackwell was required to execute in January, 1904, on account of some difference of opinion that had previously come up between Blackwell and the surety company and so, to induce the surety company to execute the 1904 bond, Blackwell agreed to furnish it indemnity.

The bond of Blackwell was, as we have said, executed on January 4, 1904, and it appears from the bond of

indemnity that it was not acknowledged by the indemnitors until April 2, 1904. But the circumstance that it was not acknowledged by the indemnitors until this date is not material, in view of the fact that the bond of indemnity recites that the surety company, at the special instance and request of the indemnitors, had executed or agreed to execute, as surety, the official bond of Blackwell; thus showing that there must have been, before January 4, 1904, an arrangement or understanding between the surety company and Blackwell and these indemnitors that in consideration of its execution of the bond they would indemnify it as set forth in the bond of indemnity. This conclusion is further fully confirmed by the fact that on January 2, 1904, Smith, Reno, Roark, the Millers and O'Bryan, six of the seven indemnitors, each signed and verified a separate paper stating that on January 2, 1904, they had signed the bond of indemnity, and further reciting the value of the property owned by them. A similar affidavit and statement was made on January 5, 1904, by Wickliffe, the other indemnitor, reciting that on that date he had signed the bond of indemnity.

We, therefore, have no difficulty in ruling that the bond of indemnity was executed simultaneously with the bond of the surety company, or at any rate that the bond of indemnity, although it may not have been finally executed and delivered until April, 1904, was then fully executed and delivered pursuant to an agreement made before or at the time bond was made by the surety company, that the bond of indemnity would be executed. It is immaterial which of these views is correct, because if the bond of indemnity was executed and delivered simultaneously with the bond of the surety company, or was afterwards executed and delivered pursuant to an agreement or arrangement made between the surety company and the indemnitors before or at the time it signed Blackwell's bond, there was a sufficient consideration for the execution of the bond of indemnity. In other words the execution of a bond of indemnity subsequent to the execution of the original undertaking will have the same force and effect as if it were executed simultaneously with the original undertaking if its subsequent execution was pursuant to an arrangement or agreement between the indemnitee and the indemnitors at the time or before the indemnitee became bound that

there should be executed to it a bond of indemnity. Grim v. Semple, 39 Iowa 570; Carman v. Noble, 9 Pa. St. 366; Gamball v. Cuino, 21 N. Y. App. 413; Rix v. Adams, 9 Ver. 233, 31 A. D. 619.

Plainly, under all the facts and circumstances appearing in the record it was the intention of all the parties that this bond of indemnity should be executed as a part of the contract by which the surety company became liable on the bond of Blackwell, and this manifest intention, should not be defeated by the failure of the indemnitors to complete the bond of indemnity at the time the surety bond was executed.

There are cases holding, and such appears to be the established rule, that if a bond of indemnity is executed subsequent to the time when the indemnitee became liable upon the undertaking for which he wants indemnity and without a new consideration the indemnitors will not be liable on the bond unless it was executed pursuant to a prior arrangement because there was no consideration for its execution. Daviess County Bank & Trust Co. v. Wright, 129 Ky. 21; Rix v. Adams, 9 Ver. 233, 31 A. D. 619; Jones v. Shorter, 1 Ga. 294, 44 A. D. 649. But, as we have said, this principle has no application to the facts of this case because the bond of indemnity was executed pursuant to agreements entered into between the indemnitors and the indemnitee at the time or before the indemnitee became liable on the undertaking for which it desired to be indemnified.

The other question is, did the surety company on account of its laches release the indemnitors from the liability they assumed by signing the bond of indemnity?

The bond of indemnity was by its terms an express undertaking to indemnify and keep indemnified the Fidelity & Deposit Company, ''for and against any and all loss, damages, costs, charges, counsel fees, and expenses of whatever nature or kind to the extent of $5,-000.00 and no further, which the Fidelity & Deposit Company shall or may at any time sustain, incur or be put to for any reason, or in consequence of having executed said bond, or any continuation thereof.'' This undertaking was as broad as it could well be made and under it the indemnitors became liable to the surety company for the full amount it was required to and did pay as the surety of Blackwell under the judgments of the Muhlenberg circuit court, and when it satisfied the judg-

ments it had the right to proceed, at once, against the indemnitors to collect from them the amount it was required to and did pay in satisfaction of the judgments, unless it had by negligence or laches released the indemnitors from liability.

It is argued, however, by counsel for the indemnitors that as the surety company could have protected itself from loss if it had in seasonable time proceeded against Blackwell and his vendees as pointed out in Blackwell v. Fidelity & Deposit Company, 163 Ky. 76, its failure to take this action released them from liability on the bond. This is the only negligence or laches relied on by the indemnitors to release them from liability. In that case the court said that the surety company was subrogated to the lien of the Commonwealth, and in the suit by the county of Muhlenberg against it on its bond for Blackwell it could have filed a cross-petition against Blackwell and his vendees, and thereby preventing the statute of limitation from being a bar as it was to the suit it did bring in 1913 against Blackwell and his vendees.

The question, therefore, is, was the surety company under a duty to the indemnitors to bring the suit that this court, in the opinion referred to, said it might have brought, and did its failure to bring this suit release the indemnitors from liability?

In disposing of the question it is well to keep in mind the broad terms of the bond of indemnity, and the fact that pursuant thereto the surety company had the right to look to the indemnitors for any loss it might sustain by virtue of its undertaking on the bond of Blackwell when its liability and loss was fixed and determined as it was by the judgments against it, unless it be as contended by counsel for the indemnitors that it lost its right of recourse on them by its failure to sue Blackwell. The surety company was not, however, guilty of negligence or laches in failing to bring this suit. It was not required to resort to any remedies it might have against Blackwell or other persons through him. When it satisfied the judgments it had the right to proceed at once against the indemnitors on their undertaking to save it from loss.

A case directly in point on these questions is Pope v. Davidson, 5 J. J. M. 400. In that case Pope, for the purpose of inducing Davidson to become the surety for

Gregory executed to him a bond of indemnity in which he agreed that he would "indemnify him and save him harmless, and from all loss, injury and damage, which he may sustain, or be liable to in consequence of becoming security for said Gregory in the note aforesaid." Judgment was obtained on this note by Helm, the payee, against Gregory, Davidson, and Hughes, another surety, and an execution was issued upon the judgment, and levied on sufficient property of Gregory, the principal, to satisfy it. After this, in consequence of certain acts of Davidson not necessary to recite, the property of Gregory levied on was released from the execution lien, and thereupon Davidson was required to pay the amount of the judgment, and afterwards brought suit against Pope on his bond of indemnity to recover the amount so paid.

In determining the legal effect of the bond of indemnity, the court said: "But, whatever may have been the actual intention of the parties, we are of opinion, that the legal construction of the covenants is, that if Davidson should necessarily or legally be subjected to any loss in consequence of his suretyship, he might call on Pope immediately for indemnity, and not be compelled first to resort to his collateral and independent legal remedies against his principal and co-surety."

But the court further said that as Davidson by his voluntary and unrequired acts had released the property of his principal, Gregory, from the payment of the judgment to which it could have been subjected, and thereby brought upon himself, by his own conduct, the necessity of paying the judgment, he could not look to the bond of indemnity for reinbursement. To the same effect is Davidson v. Pope, 3 Dana 271.

Another case affirming the principles announced in the Davidson case is Spilman v. Smith, 15 B. M. 123. In that case Smith became the surety on a purchase money bond executed to a court commissioner and for the purpose of protecting Smith from loss as surety in this bond Spilman executed to him a writing in which he undertook "to secure the said Smith against all harm in the payment of the said note." After this, Smith satisfied the purchase money bond and brought suit against Spilman on his bond of indemnity. Spilman insisted that Smith had released him from liability on the bond of indemnity by agreeing that no execution

should issue until after the expiration of a year from the maturity of the purchase money bond, and in consequence of this agreement no execution did issue until after the expiration of a year. He further defended upon the ground that the payee in the purchase money bond, by failing to have an execution issued within a year, would have released Smith as surety in the bond, and was only enabled to hold him liable as surety because of his agreement that the issual of the execution might be delayed beyond a year.

The court in commenting on the effect of this conduct of Smith and in holding that it did not release Spilman from liability on the bond of indemnity said: "If the conduct of Smith was wrong (the sureties in the bond of indemnity not having been consulted), and it can be said to have prejudiced their rights, it may be that they are exonerated from responsibility upon their bond. But, was his conduct wrong, and can he be properly chargeable with having prejudiced their rights? According to the construction which we place upon the bond of indemnity its obligation is substantially this: That Bates should pay the sale bond at maturity, and if he failed to do so, and Smith should pay it for him, they were to save him from all harm in doing so. The words of the bond, in the obligatory part thereof, are: 'We, the undersigned, promise to secure the said Smith against all harm in the payment of the said note (the sale bond) but if the said Bates should pay said note, then this obligation to be null and void, else to remain in full force as a replevin bond.' Bates was bound to pay the sale bond at maturity; if he failed to do so, and Smith should pay it for him, the bond of indemnity was to be in full force, and they were to save him from all harm for doing so. This sale bond became due, and Bates failed to pay it, as he had bound himself to do. Bates having failed to make payment, Smith, as joint obligor with him, was bound, forthwith, to pay the bond. And had he done so, it is not denied but that the sureties in the bond of indemnity would have been responsible. But because it was not convenient for Smith to pay, and he asked indulgence which was extended to him, and extended for more than twelve months after the maturity of the sale bond, it is insisted that the sureties in the bond of indemnity are released, because, by the indulgence, thus procured, their risk was increased, and they were there-

by prejudiced. But Smith made no binding contract with the obligee in the sale bond; he only craved indulgence, and indulgence was granted, but the obligee could have sued out execution at any moment, and coerced payment, notwithstanding the prayer of Smith to be indulged. The fact that Smith begged indulgence did not necessarily produce the delay of execution until more than twelve months had elapsed from the falling due of the sale bond. True, it was at his instance that the delay was produced, and hence he could not claim to be released by operation of law. And he, continuing to be bound, paid the debt of his principal, upon the happening of which contingency, the sureties in the indemnity bond were to save him harmless. They made an absolute undertaking to pay Smith, if he, Smith, should pay the debt of his principal, Bates. It formed no part of the contract that Smith, if unprepared to meet the sale bond, when due, and Bates should not pay it, was to ask no indulgence, but to pay instanter. There was nothing to prohibit him from begging and procuring indulgence, and it can not be said with propriety that Smith did anything which he had not a right to do, or that he acted in bad faith toward those who had undertaken to indemnify him, and hence, they can not, with propriety, charge Smith with enlarging their obligation, and increasing their responsibility. Their bond bound them to pay, if Smith should pay, and their hazard had already been incurred by their own absolute stipulation without any restrictions upon Smith.''

Accordingly, we think that the surety company was under no duty to have brought a suit against Blackwell to recover from him the amount it paid or might have to pay as his surety, although by bringing such a suit it might have saved itself from loss as the surety of Blackwell, and, of course, if it had done this there would have been no liability on the indemnitors, because the surety company would not have suffered any loss by reason of its suretyship in the bond of Blackwell.

When the surety company was sued by the county of Muhlenberg it, at once, gave notice of this suit to the indemnitors and they had the right to take such action as they saw proper to protect themselves from loss by instituting themselves, or demanding that the surety company, for their benefit, should institute such proceedings against Blackwell as would save them, as well

as the surety company, from loss on account of his defalcation. But the indemnitors did not themselves take any action against Blackwell at that time, nor did they call on the surety company to do so. Evidently the surety company as well as the indemnitors were of the opinion that they need not and could not, to protect themselves, take the action that it was held in Blackwell v. Fidelity & Deposit Company, 163 Ky. 76, might have been taken.

It was not until after judgment had gone against the surety company that the indemnitors determined to make an effort to recover the amount of the judgment from Blackwell, and then they entered into the agreement with the surety company, heretofore mentioned, by which in its name and for their benefit, suit against Blackwell was instituted.

Under these circumstances it is very plain that there was no negligence or lack of good faith on the part of the surety company; it did not neglect or fail to do anything it was under a duty to do, or do anything that it should not have done.

Under the law, as we understand it, the laches or negligence of the indemnitee that will release the indemnitors on a bond of indemnity conditioned like the one here in question must be the direct result of some act or conduct on the part of the indemnitee but for which he would not have suffered any loss. In other words, when the indemnitee is sought to be made liable on his undertaking he must not by his laches or negligence put upon the indemnitors a burden they would not otherwise be compelled to bear, but this duty does not go to the extent of obliging the indemnitee to bring suit against his principal or third parties to protect the indemnitors or to take any steps to recover from his principal or third parties the fund for which he has become liable on his undertaking. It is the business of the indemnitor to resort, for their own protection, to remedies like these if they desire to do so.

Wherefore the judgment is reversed for proceedings not inconsistent with this opinion.