[Civ. No. 18860. First Dist., Div. One. July 8, 1960.]

CALIFORNIA VIKING SPRINKLER COMPANY (a Corporation), Respondent, v. GEORGE D. CHENEY et al., Appellants.

Harold D. Cutler for Appellants.

Nagle & Vale for Respondent.

TOBRINER, J.—Appellants urge that the evidence in this case fails to support the findings of the trial court enforcing a mechanic's lien for the unpaid balance due upon a written contract for the installation of a pipe system of automatic sprinklers in appellants' apartment house. Appellants claim that the court should have sustained their affirmative defense that respondent fraudulently misrepresented that 483 automatic sprinkler heads would be installed although it actually only installed 411. Performing our limited function of examining the record to determine if substantial evidence supports the findings, we have concluded that they are thus supported.

Three provisions of the contract particularly pertain to this case. The first provided, "The price for the work as specified in the within Proposal and Specifications is Fourteen Thousand Eight Hundred Fifty and No/100 Dollars ($14,850.00), based on the installation of approximately 483 Automatic Sprinklers . . ." The second postulated that the system be "subject to inspection by the Pacific Fire Rating Bureau and the San Mateo Fire Department—acting as the Agent of both parties, whose inspection and approval of the work done hereunder by the Seller shall be conclusive evidence of the proper performance and completion of the Seller's obligations hereunder." The third term, which the parties apparently struck out, stated,

"If more or less than the aforesaid number of either automatic or open sprinklers be required, Buyer shall be charged or credited at ————— Dollars ($———) each for Automatic Sprinklers and ————— Dollars ($———) each for Open Sprinklers."

Appellants contend that by reason of the alleged fraud and misrepresentation the consideration they were to pay under the contract failed to the extent of $2,160. To respondent's additional causes of action based on common counts for work, labor, services and materials, appellants repeat the same affirmative defenses of fraud and misrepresentation. Appellants further allege that the sum of $12,690 constitutes the reasonable value for the labor and equipment thus supplied as against respondent's allegation that the contract price of $14,850 represented a reasonable market value for such installation.

The trial court rendered findings of fact and conclusions of law to the effect that there was no fraud or misrepresentation, no reliance by appellants, no damage incurred by appellants and no failure of consideration. Rendering judgment for respondent for the disputed sum of $2,821.50, with interest, counsel fees and costs, the court established a lien to this extent on the property. Appellants appeal from this judgment.

Our task resolves into an examination of the record under the familiar principles that we look only for substantial evidence to support the findings (*Overton* v. *Vita-Food Corp.* (1949), 94 Cal.App.2d 367 [210 P.2d 757]) and that we resolve every substantial conflict in the testimony in their favor. (*Bancroft-Whitney Co.* v. *McHugh* (1913), 166 Cal. 140, 142 [134 P. 1157].) We discuss, first, the findings and supporting testimony as to appellants' principal issue of fraud; second, the findings and supporting testimony as to reasonable value of the services and materials; finally, the question as to whether respondent is entitled to attorneys' fees and costs on appeal.

The crux of appellants' case lies in their objection to Findings 17 through 23, which relate generally to the defense of fraud and misrepresentation. In substance appellants argue that the record shows (1) that representations "had actually been made that 483 automatic sprinklers would be required" and that no defense could be established that such "representation was not false, or known to be false by plaintiff's agent, at the time made, or that the representation was made to induce defendants to approve the contract at the price of $14,850.00"; (2) that the number of sprinklers actually installed were substantially less than that represented and

that it is not "conceivable that the plaintiff's sales engineer did not falsely represent to defendants the number that would be required"; (3) that only 411 heads were installed, requiring a finding of misrepresentation; (4) that defendants agreed to pay the sum of $14,850 because of the representations and their reliance on them; and (5) that plaintiff's sales engineer represented that the price was computed at approximately $30.00 per head and "that was a rule of thumb in the industry." Contending that these five points combine to compel a conclusion in their favor, appellants submit that the findings fall. We shall point out briefly that substantial evidence, however, sustains the findings.

▮ Despite appellants' first point that respondent's fraud directly flows from the divergence in the number of sprinklers set forth in the contract and those actually installed, the court's contrary finding rests upon substantial testimony. Contending that the number of sprinklers automatically and determinatively fixed the price, appellants stress the fact that respondent's sales engineer Wakeman first prepared a proposal to install a system of approximately 498 sprinklers but later found he had misread the plans ("I had sprinklers out under . . . shades or awnings") and reduced the number to 483. He testified the first proposal "included too many heads." The number of heads comprised so vital a part in figuring the job, according to appellants, a substantial discrepancy between the expert's figure and those installed could only originate from fraud.

The record, however, affords contrasting factors. In the first place, the parties treat the 483 heads figure as an "estimate"; in the second place, the contract provides that the price is "based on the installation of APPROXIMATELY 483 Automatic Sprinklers." Finally Wakeman's testimony discloses that the number of heads indicates the "size of the system"; that "it is [a] very complicated system of pipes . . . the number of heads tells me . . . the size of the system . . ." Thus the number of heads serves as the key to the size of the system, which is the determinative cost factor; the heads themselves do not constitute the cost factor. Hence, according to Wakeman, there could be considerable variation in the number of heads. "In other words when I get done with a job and I say 483 heads, I am happy if it is 10 or 20 less." When Wakeman completes his estimate he submits the plans to the "engineer" of the company and "he takes the plans and actually draws this sprinkler plan that has

to be approved by Pacific Fire Rating Bureau and that our men install . . ." According to Wakeman, the figure "wasn't based on a particular number of sprinkler heads. It was based on installing a sprinkler system to meet a code." Vice-president Pinkham of respondent corporation similarly testified that the estimator will base his estimate upon the plan that will "set forth piping and other component parts, including sprinkler heads, in accordance with the standard methods . . ."

In view of this testimony, we cannot hold, as appellants argue, that "*plaintiff's agent must have known*" that the heads required for the job were "substantially less than the 483 heads represented." Nothing inheres in this testimony to compel a finding that Wakeman knowingly made false estimates. The trial court's finding to the contrary does not lack substantiation in the record.

As to appellants' second contention that respondent installed substantially fewer sprinklers than represented, we find variation in the record as to the realistic figure of installations. Appellants' witness, Gordon King, testified originally that 411 sprinklers were installed; the figure rested partially upon an approximation of the number of sprinklers in the attic; since he could not enter one-half of the attic he estimated that it contained the same number of 28 sprinklers as the other half. When asked at one point "411 with 28 that you assumed were in there . . .?" he answered, "That's right." Later to the question, "It is possible, isn't it, that there are 439 heads in there including the second attic?" his response was, "Very possible." On re-direct examination he again stated that the total number was 411, including the 28 in the other half of the attic. Wakeman affirmatively answered the question: "So according to your best information, would it be correct to say there are 449 heads in there?"

Despite the discrepancies in the record, appellants argue here that it is not "conceivable" that the plaintiff's sales engineer did not falsely represent the required number of heads. We cannot hold as a matter of law that the finding against false representation frames a picture of the transaction which is not "conceivable"; the record compels no such conclusion.

As to appellants' third point that, since less than the stated number of heads were installed, the court was compelled to find a misrepresentation, we note that the finding

states "it is further not true that only 411 automatic sprinklers instead of 483 . . . were installed." We have pointed out that the testimony in the record presents a conflict as to the actual number of sprinklers installed.

 Appellants' fourth and fifth contentions relate to the agreement to pay $14,850 for the sprinkler system and to the alleged representations of sales engineer Wakeman that the price was computed at approximately $30.00 per head—"a rule of thumb in the industry." Wakeman himself testified that it was not true that he "told Mr. Cheney and Mr. Versey that . . . [the] estimate was based on approximately $30.00 a head . . ." Instead he stated that the $30.00 figure resulted from dividing the total price by the approximate number of heads on the estimate sheet; that "very coincidentally it was approximately $30.00, but that doesn't mean anything." Pinkham, respondent's vice-president, stated that the "head is probably the most minor detail of the sprinkler system . . ." To the question, "In making an estimate or in making a price for a job, does the head count as such have very much to do with that?" he replied, "No. . . . you see by the $1.05 cost, if we are putting in a number of heads why that cost on the head is relatively nothing." He also testified that there was no rule of thumb equating the number of heads with the cost of installation. The testimony as to the relatively low cost of inserting these sprinkler heads in the system and that respondent computed the cost upon the basis of the system itself, rather than the number of heads contained within it, serves to substantiate the finding.

The court in substance finds no necessary false representation in the approximation of the number of sprinkler heads to be installed; the essence of the transaction comprised the installation of a sprinkler system to protect against fire and to be approved by the Pacific Fire Rating Bureau and the San Mateo Fire Department. It was fire protection which appellants sought rather than a particular number of sprinkler heads. Appellants make no showing that they did not obtain that safeguard, confirmed by the named authorities. The deletion of the contractual clause reducing the price if less sprinklers were installed indicates that the court could properly conclude the parties did not inevitably relate the cost to the number of sprinklers.

 The findings on the contract sufficiently sustain the judgment, so that determination of reasonable value is not required. In any event the finding as to such value is prop-

erly supported. Respondent's vice-president and sales engineer both stated that the reasonable market value of the rendered labor and materials amounted to $14,850. Appellants argue that the testimony did not suffice to support the finding because "if the sum of $14,850 was [a] reasonable value for a job involving a 483 sprinkler head system" it could not be such value for a system of 411 heads. But the testimony analyzed *supra* indicates that respondent derived the cost from the installation of the entire system and that the insertion of the heads comprised a relatively minor and inexpensive item. This testimony supported the trial court's finding; we can discern no reason to disregard it.

As to the remainder of the findings, which appellants attack in a catch-all paragraph, we do not believe further discussion necessary. In the first place, appellants offer neither argument nor citation to show error in these findings. ■■ We are not called upon "to prosecute an independent inquiry" to extract the points of failure of the evidence to support such findings (*People* v. *Woon Tuck Wo* (1898), 120 Cal. 294, 297 [52 P. 833]; see also *Duncan* v. *Ramish* (1904), 142 Cal. 686, 689 [76 P. 661]; *People* v. *Daniels* (1948), 85 Cal.App.2d 182, 185 [192 P.2d 788]). In the second place, we have previously discussed the substance of the case as well as the basic facts, which the court sets out in the findings. Finally, we have read the record and find sufficient evidentiary support for each of the questioned findings.

■■ We turn to the final matter of attorneys' fees on appeal. Pursuant to paragraph 15 of the contract, respondent contends that, if it prevails, it is entitled to attorneys' fees and costs on appeal and that the remittitur should direct the trial court to determine such fees and costs and add them to the principal amount of the judgment.

Paragraph 15 provides in part: "If because of the Buyer's default or negligence the Seller shall resort to and pursue any of its lawful remedies to protect or enforce its rights hereunder (whether such remedies shall be expressly mentioned herein or not) the Buyer shall pay all the costs and expenses of the Seller in the premises including a reasonable attorney's fee which shall be included in the Seller's recovery."

We see no reason for refusal to uphold this clause by allowance of counsel fees for work performed upon appeal.

As the court stated in *Oakland Cal. Towel Co.* v. *Roland* (1949), 93 Cal.App.2d 713, 718-719 [209 P.2d 854], in construing a contract which provided for "reasonable counsel fees incurred" in "enforcement of the terms of the agreement," the provision "does not appear to be ambiguous" and the "enforcement of the terms of the agreement required that on appeal there should be a defense of the judgment." (See also *Downer Corp.* v. *Union Paving Co.* (1959), 172 Cal. App.2d 126 [342 P.2d 64].) Respondent's claim under the provision here is limited to the situation in which the seller must resort to the legal remedy because of the buyer's "default" and sustains that contention in the litigation. Hence the liability for the fees would not operate to penalize an innocent buyer for standing upon a proper and sustained defense.

As Oakland Cal. Towel Co. holds, the determination of the amount of the fees rests with the trial court upon an appropriate showing as to the nature of the services and the related facts. Both under the involved contract and the Rules on Appeal (rule 26(a)), respondent is entitled to its costs on appeal.

We affirm the judgment and direct the trial court to determine a reasonable attorney's fee for services performed on appeal and to add such fee to the principal amount of the judgment.

Bray, P. J., and Duniway, J., concurred.