[Civ. No. 24869. Second Dist., Div. One. Dec. 28, 1960.]

FIDELITY AND DEPOSIT COMPANY OF MARYLAND (a Corporation), Respondent, v. CARL WHITSON, Appellant.

Carl Whitson, in pro. per., and Walter Desmond, Jr., for Appellant.

Maurice H. Wallbert for Respondent.

LILLIE, J.—Plaintiff's action sought to recover from defendant, as indemnitor under a contract of indemnity, the sum of $3,529.05 plus interest, reasonable attorneys' fees and costs. Of this sum, $2,500 represented monies paid by plaintiff as surety in compromise and settlement of a claim asserted under a labor and material bond executed on a construction job for the Long Beach Unified School District; the balance consisted of $1,000 paid by plaintiff to its counsel for services rendered in connection with matters said to have been covered by the contract of indemnity, and $29.05 expended in court costs. The trial court rendered judgment as prayed for, together with an additional award of $1,000 counsel fees for maintaining the instant action. Defendant has appealed from the judgment; plaintiff asks this court, in the event of an affirmance and pursuant to a pertinent paragraph of the contract, for an order awarding attorneys' fees on appeal. (*California Viking Sprinkler Co.* v. *Cheney,* 182 Cal.App.2d 564, 571 [6 Cal.Rptr. 197].)

The salient facts, either admitted by defendant or otherwise found to be true, are as follows: On December 19, 1949, one Curtis, as contractor, entered into a written contract with the Long Beach Unified School District to construct a lunch room assembly building at a named Long Beach elementary school; on December 22, 1949, and in connection with such contract, Curtis requested plaintiff to execute and furnish the performance and labor and material bonds required by law (Gov. Code, §§ 4200 et seq.); at or about the same time defendant also requested plaintiff to execute for and on behalf of Curtis the required bonds, agreeing to furnish plaintiff with an "Agreement of Indemnity" in connection therewith, which agreement was subsequently executed by defendant on February 17, 1950; following his entry upon the job contracted for, Curtis neglected to pay numerous claims of laborers, materialmen and subcontractors who, in due time, asserted their claims against plaintiff; defendant was advised by plaintiff that these claims were being asserted; plaintiff was re-

quired to, and did, employ counsel with respect to the processing of the aforesaid claims, all of which were paid, save one, from funds held by the school district or contributed by Curtis; the one exception just mentioned, that of Harbor Boat Building Company for labor and materials (plus attorney fees and costs), became the subject matter of a lawsuit and was settled before trial for $2,500, for which sum (and counsel fees in connection therewith) this action seeks reimbursement. Finally, the following matters alleged in the complaint were admitted by the failure of defendant to deny: On February 27, 1951, defendant instituted an action against plaintiff seeking declaratory relief respecting his liability under the ''Agreement of Indemnity''; plaintiff (as a defendant in said action) employed counsel to represent it and became obligated to pay reasonable attorney's fees; on motion of plaintiff, said action was subsequently dismissed for lack of prosecution.

Appellant's briefs are in the nature of a ''shotgun'' attack on the judgment below; contrary to settled principles of appellate practice, they have placed an undue burden on this court to ascertain the exact points contended for;[1] we have determined, however, that appellant basically is claiming that the evidence is insufficient to support the various findings of the trial court. The claim is without merit. In the discussion which follows, we shall give our reasons for the conclusion reached, touching upon such of appellant's points as require comment.

■ The evidence amply supports the finding that an indemnity agreement was executed and delivered by appellant to respondent. Robert Hecht, employed by respondent for approximately 33 years, testified that he and a fellow employee met appellant at a Long Beach used car lot, then operated by appellant, about one week before the bonds on the school job were executed; they told appellant that their employer was reluctant to proceed ''without his (appellant) being in the picture''; appellant stated then or later (but prior to the execution of the bonds) that he would furnish an indemnity agreement to respondent on the particular project; Mr. Hecht also testified that respondent would not have executed the bonds except for appellant's promise in this connection. The agreement itself was introduced into evidence; it bears the signature of appellant and Curtis, dated February 17, 1950, the signatures being acknowledged before a notary public the

[1]Appellant is a licensed member of the Oklahoma Bar although he never practiced in that state; he never sought admission to practice in California.

same day. Shown the original court file in the declaratory relief action filed by him against respondent, appellant testified that he signed the verification in blank (as was his practice when he was a party to a lawsuit); his attention was directed to paragraph VII of the complaint therein reading as follows: "At the time of the execution of the faithful performance bond mentioned in paragraph VI above, the defendant Fidelity & Deposit Company requested and obtained from plaintiff his agreement to indemnify said defendant from any loss that it might suffer as a result from being held liable on said bond"; as to the foregoing allegations, appellant stated: "I think they are generally true. I think the amount is true and I think that one is true." There was evidence that the agreement was returned by appellant to respondent, the face of the instrument bearing the imprint "Contract Dept. Feb. 27, 1950."

 Appellant contends that there was no consideration for the agreement; he argues that the "alleged Agreement of Indemnity was signed and dated . . . about two months after the bond to pay labor and material was executed," hence consideration failed in that the indemnity contract was not executed simultaneously with the principal obligation, citing 42 C.J.S., § 6(2), p. 571; further, he asserts, there was no compliance with section 2793, Civil Code, providing that a surety obligation must be in writing. First, appellant's reference to section 2793, *supra,* presumably is based on the oral understanding between the parties in December of 1949 pursuant to which the written agreement was entered into; since the oral guaranty was later acted upon and fully executed, the point is without merit. (*Salomon* v. *Ellis,* 34 Cal.App.2d 672, 679 [94 P.2d 393].) Second, the rule cited by appellant (42 C.J.S. 571, *supra*) also declares that a written agreement to indemnify need not be executed simultaneously with the contract indemnified if it be executed in pursuance of a prior agreement therefor. (*Fidelity & Deposit Co. of Maryland* v. *O'Bryan,* 180 Ky. 277 [202 S.W. 645, 646, L.R.A. 1918E 574], [cited by appellant]; *Title Guaranty & Surety Co.* v. *Packard Spink Co.,* 75 Wash. 178 [134 P. 812]; 167 A.L.R. 1184-1185, citing generally *McDonough* v. *Chu Chew Shong,* 21 Cal.App. 2d 257 [68 P.2d 976].) There is here, of course, evidence of a prior agreement pursuant to which the contract in suit was subsequently executed; if this fact were not sufficiently dispositive of the matter, it also appears that appellant neglected to plead lack or failure of consideration as an affirmative

defense and he is now foreclosed from urging the question. (*Williams* v. *Kinsey,* 74 Cal.App.2d 583, 603 [169 P.2d 487].)

Next the trial court found that respondent suffered a loss, reimbursable under the provisions of the contract of indemnity, by the payment of the sum sued for; specifically, the court found that the compromise and settlement of the Harbor Boat Building lawsuit by payment of $2,500 was entered into in good faith and upon recommendation of its counsel and in the honest belief that respondent was liable to said claimant, that respondent paid its counsel $1,000 for services rendered in the processing of claims connected with the school job including the Harbor Boat Company settlement as well as the defense of appellant's declaratory relief action, and that such sum was a reasonable fee. An indemnity agreement is to be construed like any other contract with a view to determining the actual intention of the parties; no artificial rules apply. (*United Air Lines, Inc.* v. *Western Air Lines, Inc.,* 132 Cal.App.2d 308 [282 P.2d 118].) The pertinent paragraphs of the contract of indemnity contain the following provisions: In paragraph Second, defendant agreed to indemnify and hold harmless the plaintiff from and against any and all loss, liability, damages, costs counsel fees, charges and expenses of whatever nature or kind which the plaintiff shall or may at any time incur, sustain or be put to, for or by reason or in consequence of the execution of the bonds which were executed by plaintiff in connection with the Burnett Elementary School job; in paragraph Eighth defendant agreed to and did waive all notice of any default or any other act or acts giving rise to any claim under the bonds or of any liability on the part of the defendant as indemnitor under the contract of indemnity; paragraph Tenth provided that in the event of any claim or demand made upon plaintiff by reason of the bonds referred to, or any of them, *plaintiff shall be at liberty to pay or compromise the same, and the voucher or other evidence of payment, compromise or settlement of any claim, demand, liability, cost, charge, expense, suit or judgment by reason of said bonds shall be prima facie evidence of the fact and of the extent of the defendant's liability as indemnitor* under the contract of indemnity to the plaintiff; paragraph Sixteenth provides, in part, that the plaintiff as surety *shall have a right* to apply to the court in which any action might be brought against plaintiff as surety under the bonds in question for an order making the defendant, as indemnitor, a party defendant thereto; paragraph Seventeenth provides that the obligation evidenced by the contract of in-

demnity shall be liberally construed so as to fully protect and indemnify the plaintiff.

 Respondent's draft, a photostatic copy of which was admitted into evidence by stipulation, established payment by respondent of $2,500 in settlement of the Harbor Boat Company lawsuit; a draft to the order of Joe Crider, Jr., respondent's attorney, in payment of $1,000 counsel fees and costs ($29.05), was likewise introduced into evidence by stipulation. Under the provisions of paragraph Tenth, the foregoing exhibits constituted prima facie proof of the fact of such payment and the extent of appellant's liability under the contract; these provisions, it appears, have the sanction of decisional law (17 C.J.S., Contracts, pp. 607, 608, note 89)—indeed, there is authority supporting the validity of provisions that vouchers or other evidence of payment shall be *conclusive* evidence thereof upon a showing that payment was made in good faith. (42 C.J.S., Indemnity, § 35(c), p. 629.) Mr. Crider, an attorney with some 50 years of experience in the field of suretyship law, testified that he could not see any defense to the Harbor Boat case: "I dickered with them and we didn't get any place." Appellant did not negative or rebut Mr. Crider's testimony on the question of good faith, and the evidence otherwise supports the finding that "said compromise and settlement was entered in good faith by plaintiff and upon the recommendation of its counsel in said proceeding and in the honest belief that plaintiff was liable to said claimant . . ." Appellant makes the point that paragraph Sixteenth made it mandatory upon respondent to apply to the court where such action was pending for an order joining appellant as a party defendant therein; the pertinent paragraph did not *require* that respondent pursue such remedy although it had the right to apply for an order of joinder.

Further on the finding that respondent suffered a loss, appellant argues that it was incumbent upon respondent to allege and prove that it was legally liable, that a judgment had been secured against it, the amount of such judgment or that the fact that the judgment had been paid. The law is to the contrary. An indemnitee is not bound to submit to suit before paying the claim; of course, if he pays without such suit, he must prove that he was liable for the amount thus paid in order to recover from the indemnitor. (*Carpenter Paper Co. v. Kellogg*, 114 Cal.App.2d 640, 651 [251 P.2d 40].) So, where there is no trial and no judgment establishing liability, but a settlement of the litigation has been made, the settle-

ment becomes presumptive evidence of the liability and the amount thereof, which presumption is subject to being overcome by proof. (*Lamb* v. *Belt Casualty Co.*, 3 Cal.App.2d 624, 631-632 [40 P.2d 311].) It was for the trial court to determine whether the presumption just mentioned was overcome in the case at bar; its determination in that regard, favorable to respondent, is binding on this court.

■ A determination of appellant's liability, or that of any other indemnitor, must nevertheless be controlled by the rule that a voluntary payment made by the indemnitee, without regard to its liability, is not recoverable. (*Southern Calif. Gas Co.* v. *Ventura Pipe Line Const. Co.*, 150 Cal.App.2d 253, 257 [309 P.2d 849].) ■ It is conceded that the Harbor Boat action was filed after the statute of limitations against respondent as surety (six months) had run (Gov. Code, 4206), and the plaintiff in that lawsuit was properly in court only because of a waiver of time (within which to sue) extended it by respondent through its attorney, Mr. Crider. There was testimony by Mr. Crider that numerous claims were asserted against his client as surety and that many of the claimants were threatening to file suit—in actions of this kind, section 4207 of the Government Code provides for an award of attorneys' fees to the prevailing party. Mr. Crider testified that it was sound suretyship practice to extend time for the filing of suit on such claims in order to avoid lawsuits as well as the additional expense incident to attorneys' fees recoverable under the governing statute. Respondent, of course, had a duty to minimize the loss of its indemnitor; furthermore, it seems that the wisdom of Mr. Crider's decision was demonstrated by the fact that all claims save that of Harbor Boat Company, were settled without the necessity of a lawsuit. Irrespective of the realities of the situation, section 4206 is a statute of limitations (*People* v. *Continental Casualty Co.*, 118 Cal.App.2d 133, 135 [257 P.2d 495]) and may be waived by the party entitled to assert the same. (*Bohn* v. *Watson*, 130 Cal.App.2d 24, 36 [278 P.2d 454].)

■ Respondent properly maintains, in response to a contrary claim by appellant, that the present action was not barred by the four-year period embodied in section 337, subdivision 1, of the Code of Civil Procedure. The four-year period commenced to run when respondent sustained its loss, namely, the payment of the sums herein sued for (*Globe Indemnity Co.* v. *Larkin*, 62 Cal.App.2d 891, 894 [145 P.2d 633]); the institution of the instant action was within that period.

■ Finally, as to the matter of attorneys' fees the contract of indemnity provided therefor, and the sole question before us is the reasonableness of the sum ($1,000) paid to Mr. Crider by respondent prior to the filing of the instant action and the additional award ($1,000) made by the trial court, for services in connection with the instant litigation. Mr. Crider testified as to the nature of the services rendered respondent: the processing of the various claims, extended negotiations for the settlement of the Harbor Boat Company lawsuit which represented a "potential loss of $6,148" and the defense of appellant's declaratory relief action. ■ Where a trial court has fixed the compensation of an attorney, its determination in that respect will not be disturbed unless there is a plain and palpable abuse of discretion (*Kurland* v. *Simmons*, 126 Cal.App.2d 79, 82 [271 P.2d 553]) which, in the present case, has not been made to appear. Appellant's reliance on *Byron Jackson Co.* v. *Woods*, 41 Cal.App.2d 777 [107 P.2d 639], is misplaced where there was a voluntary payment for defending a suit caused by the indemnitee's own wrongs; the case is factually dissimilar. As for the award of fees for the maintenance of the present action, appellant does not question that he is liable therefor under paragraph Second of the contract, but he does maintain that the award is excessive. Again, the familiar rule is applicable that it is for the trial court to judge the reasonable value of legal services; the award of $1,000 was not unreasonable under accepted criteria applicable here.

As indicated in the opening paragraph of this opinion, respondent is also asking this court, in the event of an affirmance, for an order awarding additional attorneys' fees on appeal. Paragraph Second of the contract provides for such fees, which provision is also applicable to services rendered on appeal. (*California Viking Sprinkler Co.* v. *Cheney, supra,* 182 Cal.App.2d 564.)

The judgment is affirmed; the trial court is directed to determine a reasonable attorney's fee for services on appeal and to add such fee to the principal amount of the judgment.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 13, 1961, and appellant's petition for a hearing by the Supreme Court was denied February 21, 1961. Schauer, J., was of the opinion that the petition should be granted.