[Civ. No. 20552. First Dist., Div. One. Nov. 27, 1962.]

BERVEN CARPETS CORPORATION, Plaintiff and Respondent, v. DON DAVIS et al., Defendants and Appellants.

Bernard Mendel for Defendants and Appellants.

R. L. Miller and Hoffman, Davis & Martin for Plaintiff and Respondent.

SULLIVAN, J.—Defendants appeal from a judgment rendered against them in an action on an unsecured promissory note. We have concluded that the evidence is sufficient to support the findings that the execution of the note was not induced by fraud on the part of the plaintiff and that the judgment should be affirmed.

The present litigation arises out of the written guarantee by the defendant Don Davis of sales of merchandise made by the plaintiff to a corporation owned by his brother Jerry Davis. Plaintiff sells carpets and rugs at wholesale. During the years 1957 to 1959, Jerry Davis was the president and sole owner of Von's Carpet House, Inc., a corporation doing business at Jerry's Carpet Mart, which had its principal place of business in San Jose and was engaged in selling carpets and rugs at retail. Jerry Davis also owned and managed another corporation known as Empire Carpet, Inc., which also sold carpets and rugs at retail in San Jose but was located at a different address. For convenience we hereafter refer to the above corporations as Jerry's and Empire, respectively.

On November 19, 1957, Don Davis, who was then vice-president of Jerry's, in order to establish credit for that business executed and delivered to the plaintiff a personal written guarantee by the terms of which he requested plaintiff to "sell and deliver to [Jerry's] . . . such goods and wares and merchandise as they may from time to time select" and in consideration thereof guaranteed the payment of the same, the document stating that it was "intended to be a continuing guarantee applying to all sales made by you to said Jerry's Carpet Mart." On May 18, 1959, plaintiff, through its attorneys, made a written demand on Don Davis for the payment under the above guarantee of a balance claimed to be due from Jerry's in the sum of $18,317.41. On June 1, 1959, no payment having been made, plaintiff commenced legal action against Don Davis, and caused a writ of attachment to be levied on his property.

As the result of a conference on June 3, 1959, between Don Davis and his attorney with the attorneys for the plaintiff, a settlement of the above legal action and unpaid account was reached under which Don Davis agreed to deliver to plaintiff a promissory note in the sum of $18,350 signed by

Don Davis and his wife Norma. This was done on June 5, 1959, and upon the payment of the first installment of $6,000 provided for in said note, the plaintiff dismissed its action and released the attachments. It is this promissory note which is the subject of the cause now before us.

Don Davis made 11 additional monthly installment payments of $500 on the note until May 1960 when he stopped paying altogether. In the meantime both Empire and Jerry's had been adjudicated bankrupts during July and August 1959. It was Davis' claim that just before he stopped making payments on the note, and while examining certain records in the bankruptcy proceedings, he discovered that part of balance claimed to be due from Jerry's in June 1959 and for which payment was demanded under the guarantee had arisen from shipments of merchandise made to Empire but billed to Jerry's.

On the failure of defendants to continue making payments on the note, plaintiff elected to accelerate its maturity and on June 14, 1960, commenced the instant action to recover the unpaid principal balance of $7,321.40, together with interest thereon. Defendants' answer admitted the execution and delivery of the note, admitted the amounts paid thereon, denied that the amount claimed was due, owing or unpaid, and pleaded two separately stated affirmative defenses alleging lack of consideration and fraud. By a cross-complaint, incorporating both affirmative defenses, the defendants sought recovery of all payments theretofore made by them on the note. In substance the first affirmative defense was that the defendants had executed the note relying on the truth and accuracy of plaintiff's statement that Jerry's had refused to pay $18,350 for merchandise sold by plaintiff to it and that the defendants were obligated to pay the same under the guarantee whereas in fact Jerry's was not then indebted to plaintiff in the sum of $18,350 ''or at all'' and that defendants thus received no consideration for the note. The second affirmative defense alleged that prior to the execution of the note, the plaintiff and Jerry's secretly agreed that plaintiff would sell and deliver merchandise to Empire but would charge the same to Jerry's; that such agreement was concealed from defendants; that prior to the execution of the note here involved, plaintiffs represented to defendants that $18,350 was due for merchandise sold to Jerry's and de-

fendants executed the note, relying on such representations and not knowing that they were false.[1]

The trial court found that all of the allegations of the complaint were true, that all of the allegations of the answer and cross-complaint, except those admitted by plaintiff's answer to the cross-complaint, were untrue, and rendered judgment in favor of plaintiff for $7,321.40 principal, $585.70 interest and $1,500 attorneys' fees and costs, said judgment providing that defendants take nothing by their cross-complaint.

Plaintiff contends before us that the court erred (1) in not finding that the execution of the promissory note was induced by fraud; (2) in not finding that the execution of the note by Norma Davis was without consideration; (3) in not finding that a certain consignment agreement between plaintiff and Jerry's remained unterminated as a result of which title to the merchandise remained in plaintiff; and (4) in not making findings on certain issues and making unsupported findings on others. We take up these contentions in the above order.

From the general findings of fact, it is clear that the trial court must necessarily have found that no false representations were ever made and that the defendant Don Davis neither reasonably believed nor relied upon any representations which were made. However, much of the argument marshalled by defendants in their attack on these findings might be more properly presented to the trier of fact.

Our task is to determine whether the findings against fraud on the part of the plaintiff are supported by substantial evidence. In making this determination, we apply the familiar rules, which need no citation of authority, that all conflicts in the evidence must be resolved in favor of the plaintiff and all reasonable inferences be indulged in to support the judgment.

The elements of actionable fraud are set forth in *Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 422 [159 P.2d 958] in the following language: "In general, to establish a cause of action for fraud or deceit plaintiff must prove that a material representation was made; that it was false; that defendants knew it to be untrue or did not have sufficient knowledge to warrant a belief that it was true; that it was made with an intent to induce plaintiff to act in reliance

---

[1]These pleadings reflect certain minor discrepancies. Actually the demand was made against the defendant Don Davis, sole signatory of the guarantee, and for an unpaid balance of $18,317.41.

thereon; that plaintiff reasonably believed it to be true; that it was relied on by plaintiff; and that plaintiff suffered damage thereby."

In the instant case the gist of the fraud which is claimed to infect the execution of the promissory note is that the plaintiff demanded from Don Davis, under the latter's written guarantee, the sum of $18,317.41 claimed to be due for merchandise sold to Jerry's when in fact such sum included merchandise sold to Empire and to another sales outlet owned by Jerry Davis called Buyers' Union. All this was done according to a secret arrangement so that sales to the other outlets would be charged to Jerry's account, thus falling within the written guarantee. The crucial event occurred on June 3, 1959, at the office of plaintiff's counsel, when such counsel, as the argument goes, knowing the true facts, presented to the defendant Don Davis a statement of the amount due which was not true. Thus, it is claimed, plaintiff, in causing such demand for payment to be made and in procuring the promissory note, not only committed an act of concealment but a direct act of false representation.

However, as the argument itself points up, essential to the establishment of fraud is the element of falsity. Implicit in the entire affirmative defense which defendants advance in order to avoid liability, is the basic fact there were sales of merchandise to Empire or Buyers' Union which were included in the above balance of $18,317.41. If no such sales were made, then the representation could not be false. The record discloses no direct evidence of any such sale and indeed shows no effort on defendants' part to prove a specific sale or sales, even though the records of Jerry's were available to them. This position before the court is indicated in the testimony of the defendant Don Davis and the remarks of defense counsel. In response to an inquiry by the court as to how much was actually due from Jerry's to the plaintiff, defendants' counsel stated "I don't know, except that it was less than $18,000." Upon further inquiry as to "what is your position here? How much did Jerry's owe? How much is in the fraud here?" such counsel responded "That figure, your Honor, we do not know." The defendant Don Davis, though having the opportunity during his testimony to direct the court's attention to any particular sale to Empire or to any other outlet, failed to do so.

As a counter argument, defendants point to certain statements and invoices sent by the plaintiff and in addition to

certain testimony. The documentary evidence introduced by the defendants during the examination of Don Davis consisted of various invoices showing merchandise "sold to" Jerry's and "ship to" Empire or Buyers' Union, various invoices showing merchandise "sold to" Empire and "ship to same"; bills of lading from plaintiff to Empire and miscellaneous statements of charges and credits sent to Jerry's. The record is devoid of any analysis of this evidence. Don Davis testified that he did not know which of the invoices were paid. Defendants make no attempt to relate any of the above invoices to the unpaid balance of $18,317.41 as of June 1959 so as to show that such goods are included therein.

The trial court could, as it did, properly infer in those instances where the invoices showed the merchandise sold to Jerry's but shipped to Empire, that the transaction was exactly as represented by the document. This is not an uncommon commercial practice. If such an inference is drawn, then there was no sale to the outlet to which shipment was made but to Jerry's. In this event, the written guarantee became operative to fasten liability for such sale upon the defendant Don Davis. Indeed this seems to have been the inference and conclusion drawn by the trial judge who viewed the address of Jerry's in the written guarantee as immaterial and apparently concluded that there was no evidence at all of any sale by the plaintiff to Empire or Buyer's Union, which then was charged to Jerry's account.[2] We cannot say such a conclusion was an unreasonable one.

However, the defendants argue that such conclusion by the trial court ignores the testimony of Jerry Davis, brother of Don, and of Louis Giachino, credit manager of plaintiff.

Jerry Davis testified, *inter alia,* to two conversations with Giachino on the subject of Jerry's and Empire's accounts. The substance of the first conversation in July 1958 was as follows: "Well, it was the fact that the Empire Carpet account creditwise was not too good. However, Jerry's Carpets, or Von's had good credit because of the guarantee, and that we would bill everything of Empire's to Jerry's account. And that also

---

[2]Concerning the language of the guarantee "Please sell and deliver to . . . Jerry's Carpet Mart, 1177 Lincoln, San Jose . . ." the court stated "I don't think the address means a thing, frankly. Obviously if they moved a block away or went down to Los Angeles, the guarantee would still be the same." Concerning the proof of such sales, the court stated: "Here there is not even any circumstantial evidence except the allegation that certain goods were delivered to Empire and charged to Von's" [Jerry's].

to transfer any remaining balances that are on the Empire account to Jerry's account. The one that has the good credit." He was closely questioned by the trial judge. In response to such inquiries he admitted he had no idea what Jerry's owed for the merchandise it actually did receive or "what Jerry's did or did not receive, what proportions of it." When asked by the court in the same sequence of questions how much in his opinion Jerry's owed, he at first stated "not . . . over seven or eight thousand dollars," and upon being reminded of his previous testimony that he had no idea, claimed that the court "just asked me to give you an answer. . . . I could not say, sir; I don't know."

The second conversation to which he testified occurred in January 1959 during which he brought up the matter of billing: "This meeting I had brought it up, yes, why they wouldn't bill directly to Empire. The actual bills for Dorothy, our auditor, to take care of. He said this was the only way they could do it. MR. MENDEL: Q. Which was the only way they could do it? A. Jerry's Carpet Mart, 1137 Lincoln Avenue, San Jose shall ship to Empire Carpet, 244 Second Street. Q. You mean the merchandise so sold and delivered to Empire and billed to Jerry's? A. Yes, sir." He was closely interrogated by the court on this incident also. He first stated that he recollected, but would not say for sure that his brother Don Davis was present. During the court's interrogation, he variously testified that his brother did not know about the conversation, that his brother said nothing during the course of it, and that he was not sure whether his brother was present at the above meeting although Don Davis "was with us on other matters."

Giachino, plaintiff's credit manager, was called by the defendants pursuant to section 2055 of the Code of Civil Procedure. He testified that during 1958 he had several conversations with Jerry Davis, that he did discuss the fact that plaintiff would not sell to Empire because of its poor credit and that "I did tell Jerry that I would sell Jerry's Carpet Mart on open account because I felt that the credit was sufficiently guaranteed by his brother, and that if he wished to order, he could order any merchandise that he wished, and to be charged to that account." When asked if he suggested that Jerry Davis purchase the merchandise for Empire but charge it to Jerry's, the witness responded "I don't recall such a suggestion, but it is entirely possible that we discussed that possibility." He also stated that it was not a fact that

the great bulk of sales made to Empire were billed to Jerry's but that the great bulk of sales were billed to Jerry's and delivered to Jerry's.

None of the above testimony resulted in the proof that any particular sale was made by the plaintiff to Empire (or Buyers' Union) and the amount thereof charged to Jerry's or that any part of the unpaid balance of $18,317.41 represented a sale to Empire. ▮▮▮ It was the exclusive province of the trial court to weigh and evaluate the above documentary and oral evidence and to determine which of the two or more reasonable inferences should be drawn therefrom. (*Kuhn* v. *Gottfried* (1951) 103 Cal.App.2d 80, 84 [229 P.2d 137].) ▮▮▮ The court could properly infer that no sales had in fact been made to Empire and charged to Jerry's, that no such sales were therefore concealed from Don Davis and that, assuming that the demand for payment embraced a material representation of the amount due, no misrepresentation had in fact been made. The finding of the trial court that there was no element of falsity in the representation was therefore supported by the evidence.

While the court's finding, upon substantial evidence, that the statements made to Don Davis were not false obviously disposes of the issue of fraud, we propose to examine the findings and evidence dealing with such defendant's reliance on and reasonable belief in the truth of the statements.

▮▮▮ The critical episode fastened upon by defendants is the meeting of Don Davis and his counsel with plaintiff's counsel on June 3, 1959. Davis gave testimony concerning this event not only in person at the trial but in his deposition which was admitted in evidence at the trial. From all of this testimony it appears that Don Davis attended the conference with his own counsel, that he informed such counsel that the stated balance of Jerry's account "was much too high," that he "questioned the amount," but that nevertheless it was his purpose, with the advice and assistance of such counsel, to make a settlement of the first legal action and secure a release of the attachments. It was proper for the court to infer from this evidence that Don Davis was not relying upon the accuracy of the statements made by him but had participated in a conference with his adversaries, protected and advised by his own counsel, and depending upon the knowledge of the business carried on at Jerry's acquired personally as an officer of the corporation or from his brother. This seems to

have been the conclusion of the trial judge in finding against reliance.[3]

We cannot say that such conclusion was unreasonable in the light of this record. Don Davis, called by the plaintiff as an adverse witness, testified that shortly after he received the demand for payment from plaintiff's counsel in May 1959, he contacted his brother Jerry and asked the latter to verify whether the amount demanded was accurate; that Jerry told him he thought it was too high; that at the time the place of business was closed and the books and records of Jerry's had been taken to another location; but that he did not ask his brother who had possession of them. He also testified that the books and records of Jerry's were in the possession of his brother's bookkeeper but that he did not meet with such bookkeeper in order to check the accuracy of the plaintiff's demand.[4] The trial court could have well concluded from the foregoing evidence that Don Davis, under all the circumstances, having initiated steps to verify the statement of the account and having been put on notice as to its questionable accuracy, had a legal duty to complete his investigation and had no right to rely on the statement of the account (*Cameron v. Cameron* (1948) 88 Cal.App.2d 585, 593-594 [199 P.2d 443]) particularly when the information was available within the records of the very corporation of which he was an officer. The pertinent evidence was thus supportive of the finding that there was no reliance by Don Davis upon the statements made to him by plaintiff and its counsel and no reasonable belief on Davis' part in such statements which reliance implies. (*Hobart* v. *Hobart Estate Co., supra,* 26 Cal.2d 412, 422; *Mabry* v. *Randolph* (1908) 7 Cal.App. 421, 426 [94 P. 403].)

We are satisfied from our examination of the record that the general finding of the trial court that the execution of the promissory note here in controversy was not induced by any fraud on the part of the plaintiff is supported by the evidence. There is nothing in the evidence which compels a

---

[3]The following colloquy took place between the court and defense counsel: ''THE COURT: Well, I know, but in this deposition, he states that at the time that he executed the note he questioned the amount. MR. MENDEL: He questioned the amount, but he did not have any knowledge at that time as to how any amount was arrived at. THE COURT: I know, but what difference would it make? He questioned it.''

[4]It is to be noted that the bookkeeper kept books for both Jerry's and Empire and was apparently the same person identified by Don Davis as the employee who examined the records of the bankruptcy proceedings.

finding that the representations were in fact false, were reasonably believed by Davis to be true and were relied upon by him. The evidence is in conflict. Whether fraud is established is usually a question for the trial court to determine and where the evidence is conflicting, the determination of the trial court must be upheld. (*Hagginwood Sanitary Dist.* v. *Downer Corp.* (1960) 179 Cal.App.2d 756, 760-761 [3 Cal.Rptr. 873].)

 Contrary to defendants' second contention on appeal, the defendant Norma Davis, although not liable with her husband under the original written guarantee, is liable on the promissory note in suit as an accommodation maker. (Civ. Code, § 3110.)

 Defendants next contend that the trial court erred in not finding that all merchandise delivered to Jerry's was pursuant to a certain consignment agreement. This document dated March 18, 1957, several months before the written guarantee, was never signed by the plaintiff although it was signed by Jerry Davis on behalf of Jerry's. The court admitted it ''as a document'' stating that it thought it irrelevant and immaterial but that it could ''go in for what it may be worth.'' Defendants attempt to base on this document an argument that ''[i]f the merchandise delivered by plaintiff to Von's Carpet House, Inc., was on consignment as provided by the consignment agreement then title to the merchandise remained with plaintiff until said merchandise was sold . . .'' and hence Jerry's did not become liable for payment of the merchandise until such time. The result of all this, it is claimed, is ''an additional fraudulent misrepresentation.'' The short answer is that there was no proof at all that the merchandise was thus delivered on consignment. All of the evidence in the record shows that the merchandise was sold to Jerry's and such corporation became liable therefor.

We turn to the defendants' fourth contention. That portion of it which challenges the findings and conclusions as being without support has already been discussed and will not be repeated. The balance of the contention attacks the findings on the ground that they are not specific and are not made on every issue of the case. The point has no merit. It is well settled that a general finding that all of the allegations of a pleading are true or untrue is sufficient. (See 48 Cal.Jur.2d, Trial, § 304, pp. 305-306; 2 Witkin, Cal. Procedure, pp. 1846-1847; *Petersen* v. *Murphy* (1943) 59 Cal.App.2d 528, 533 [139 P.2d 47] and cases therein collected.)

 Finally we consider the matter of attorneys' fees on appeal. Plaintiff requests that, in the event of an affirmance, the case be remanded to the trial court for the purpose of fixing a reasonable fee to be paid its counsel for their services on this appeal. It is beyond dispute that such request finds a legal basis in the provisions of the promissory note. No legal cause exists for its refusal. (*California Viking Sprinkler Co.* v. *Cheney* (1960) 182 Cal.App.2d 564, 571-572 [6 Cal.Rptr. 197]; *Oakland Cal. Towel Co.* v. *Roland* (1949) 93 Cal.App.2d 713, 718-719 [209 P.2d 854].) As the above cases hold, "the determination of the amount of the fees rests with the trial court upon an appropriate showing as to the nature of the services and the related facts." (*California Viking Sprinkler Co.* v. *Cheney, supra,* at p. 572.)

The judgment is affirmed and the cause is remanded with directions that the trial court determine a reasonable attorneys' fee for services performed on appeal and add such fee to the principal amount of the judgment.

Bray, P. J., and Molinari, J., concurred.